John H. Fabnham, J.
After trial, the jury in these cases have returned verdicts in the above-entitled actions for the plaintiffs against the defendant William Bandall as follows:
Patricia Ann Colwell, an infant, by Chester A. Colwell, her guardian ad litem, for personal injuries sustained by her, the said infant, whose name now is Patricia Ann Kraft, $1,000; Chester A. Colwell, father of said infant, in his derivative action, $1,224. This latter verdict was returned to cover the special damages and medical expenses incurred by reason of the injuries sustained by the said infant in the automobile accident out óf which these actions arose, and the medical expenses, as they developed on the trial, were as follows:
Dr. Rifken............................$380
Dr. Cramer........................... 498
Crouse-Irving Hospital............ 18
Dr. Peacher........................... 150
Surgical collar ........ 22
Ambulance............................ 16
Dr. Childs, X rays..................... 50
Dr. Gringold, X rays............... 90
These items together total $1,224, the exact amount of the verdict rendered the father in the derivative action.
As stated, in the principal action, the infant plaintiff was awarded $1,000, and plaintiff’s counsel has made this motion under section 549 of the Civil Practice Act to set aside the verdict in favor of the infant upon the ground that it is inadequate, contrary to law and the weight of evidence and for the right to a new trial.
The evidence adduced at the trial indicates that the infant plaintiff, while a passenger on the rear seat of the automobile driven by the defendant Bandall, was injured when Randall’s vehicle came into collision with a second vehicle driven in the opposite direction by the defendant Conte. The accident occurred on June 11, 1958, at approximately 8:45 p.m., on Kimber Road in the Town of De Witt, County of Onondaga, New York.
Conte and his wife Elizabeth, who was a passenger in his car, also brought actions as plaintiffs against the defendant Randall, and with respect to their actions, the plaintiff Vincent Conte was awarded $1,000 for personal injuries which he sustained in said accident, and $1,250 for his special damages, including his medical expenses for himself and his wife, Elizabeth Conte, and *1070 she was awarded by the verdict of the jury $1,250 for her personal injuries.
It is obvious, therefore, that the jury in determining the question of negligence and liability resolved the cases by finding that the negligence of the defendant Randall, in whose car the infant plaintiff was a passenger, was solely responsible for the accident.
At the time of the accident, the infant plaintiff was 18 years of age. She sat on the left side of the rear seat in Randall’s automobile and in the impact between the two automobiles she-was thrown against the padded part of the back of the front seat, struck her head and face, blacked out, was thrown to her knees on the floor of the Randall car and, as she has stated, was left with a bleeding nose and mouth. She was otherwise injured according to her testimony in her left ankle and generally was bruised and shaken up. An ambulance was called and she was taken to Crouse-Irving Hospital, where she received emergency-treatment and X rays and some three hours later her father called for her and took her home. The next day she visited her family doctor, Dr. Rifken, who examined her and referred her to Dr. Cramer, a dentist, for dental evaluation. The latter treated her over a considerable period of time. Dr. Rifken testified that her headaches were severe with frequent attacks of dizziness accompanied by fainting spells and nausea. Her neck was very sore and Dr. Rifken ordered a surgical collar for her to wear, he having diagnosed her injury as a whiplash type with a throat and neck involvement, accompanied by dysphagia. He also diagnosed a cerebral concussion. He also testified that plaintiff’s left lower chest and abdomen were sore and painful, as well as her lower left leg and ankle. She wore the surgical collar over a period of some three or four months under Dr. Rifken’s instructions. She had dizzy spells and passed out twice in her home. Her severe headaches continued and in September of 1959, she was referred to Dr. Peacher.
The evidence is disputed as to whether the infant plaintiff wore the surgical collar constantly except at night. The evidence, however, is not in dispute that the surgical collar was prescribed for her by Dr. Rifken, that she procured it and wore it over a considerable period of time.
How, with reference to the infant’s mouth injury, the testimony is undisputed that in the accident the infant sustained one cracked front tooth and two other teeth on the side were loosened and pushed out of position. It appears to be a fact that the infant plaintiff congenitally had two bicuspid teeth missing and prior to the accident had had two other extractions some years before.
*1071 Dr. Cramer testified that he first saw the infant plaintiff on June 12, 1958, following reference to him by Dr. Bifken, and that he examined her. Her lower lip and chin were swollen, her gum tissues were cut, swollen and bruised. She had decayed areas in her mouth on the upper jaw with five anterior or front teeth remaining. She had a full set of teeth on her lower jaw with eight decayed incisors which he filled, and her two central uppers. Dr. Cramer waited for the cracked tooth to firm, as he stated, which did not occur. The infant plaintiff had two upper front teeth twisted and out of place, as he found on examination, and after waiting and hoping for the condition to correct itself, and the displaced teeth to return to their normal position, which did not occur, he determined that the membranes were destroyed beyond repair and he did four extractions of the front upper teeth involving bone surgery and subsequently provided the infant plaintiff with a complete, upper denture.
Dr. Peacher testified that the infant plaintiff was referred to him by Dr. Bifken and he first saw her on September 29, 1958, with complaints of tenderness in the upper neck and upon examination he found that there was tenderness in the C-l and C-3 areas and there was a loss of the cervical area known as lordosis; that he did two electroencephalograms on October 13 and 17, 1958, and that the results indicated to him that the infant plaintiff had sustained a concussion with an acute cervical strain. On cross-examination by defense counsel, Dr. Peacher stated that there was no gross evidence of fracture or serious injury and that the results of the encephalogram tests varied and the second test was essentially negative. The infant plaintiff had complained to him of headaches following the accident but that they had become less frequent and she had normal range of motion. Dr. Bifken testified to rather extensive damage to infant plaintiff with resultant dizziness, headaches and continuing pain in the neck area and with rather severe and extensive facial and mouth injuries with the dizziness and continuing-headaches over a long period of time. On cross-examination he testified that the X rays taken of the infant plaintiff were negative but that there was some muscle spasm found by Dr. Childs.
It is to be noted that the defendant Bandall offered no medical proof in the case.
The jury was instructed concerning the usual consideration of expert testimony and also with reference to their right to accept or reject evidence in the event that they should disbelieve any part of a witness’ testimony. However, there are certain phases and elements in this case which even the jury *1072 should not be permitted to overlook. There were certain objective evidences of serious injury which could not be cast aside even by the jury by disbelief.
Here we have a young lady 17 years of age, at the time unmarried, with at least four sound upper frontal teeth, all of which were lost as a result of the accident which she sustained. It is also undisputed that she sustained a whiplash injury and injuries to her head and cervical area. This evidence is beyond dispute; therefore, also it is beyond the realm of disbelief.
As stated, plaintiff’s counsel has moved to set aside the verdict in favor of the infant plaintiff in the amount of $1,000 on the ground of inadequacy. This court believes that she suffered painful and extensive injuries not only to her mouth and teeth but to the head, neck and cervical area as well. On the subject of whether the jury believed that she wore her surgical collar, constantly or otherwise, in resolving this motion, the court believes that the question of disbelief of her testimony in connection with the continuity of the wearing of her cervical collar is relatively unimportant. It is noted that one Summer evening when she was playing cards at a friend’s home, she removed the cervical collar for some time after having worn it, however, without dispute, for a considerable length of time, some three or four months, and in accordance with the instructions of her attending physician.
There seems to be no doubt but that “In this type of action a jury is generally considered to be the supreme arbiter on the question of damages.” (Sontz v. Berney, 1 Misc 2d 544, 545.) However,1 ‘ Where the verdict of a jury is contrary to the weight of the evidence, or where it is excessive or inadquate, the trial court is vested with the power and has the duty to set it aside and to order a new trial.” (Kligman v. City of New York, 281 App. Div. 93, 94; O’Connor v. Papertsian, 309 N. Y. 465, 471.)
In the case at bar, the jury by their verdict in the father’s action has indicated their belief in the medical testimony presented at the trial and the reasonableness of the respective amounts of all the medical bills incurred in the treatment of the infant plaintiff for the injuries which she sustained in and arising out of her accident, and it cannot be said that her medical expenses were inconsequential. Under these circumstances, it becomes difficult for this court to reconcile the amount of the verdict rendered in the derivative action in the amount of $1,224 with the lesser amount of the verdict rendered the infant plaintiff for her injuries at $1,000.
The jury has accepted all of the medical expense items without exception and in the light of this action this court regards *1073 the award of $1,000 to the infant plaintiff as inadequate, fairly and fully, to compensate her for the injuries and the pain and suffering which she sustained.
While it is not easy for the court to substitute its judgment for that of the jury and to extend its authority into the usual province of the jury, however, in the case before us, it would appear that it lies well within the area of the court’s power to set aside the verdict in supervising the work of the jury before him. The court has heard the facts developed from the witnesses and sensed the atmosphere and texture of the trial and, therefore, has the duty of maintaining reasonable consistency between the weight and the verdict reached. “ There is no standard by which to determine when a verdict” should “be set aside as against the weight of evidence.” The decision “ depends upon the discretion of the court ” (McDonald v. Metropolitan St. Ry. Co., 167 N.Y. 66, 69).
In the exercise of such discretion and under all the circumstances of this case, the court believes that the verdict of the jury in favor of the infant plaintiff in the amount of $1,000 is not adequate and falls short from being commensurate with the true value of the plaintiff’s injuries and resultant pain and suffering, which she endured.
Accordingly, a motion made on behalf of the infant plaintiff to set aside the verdict is granted and a new trial is ordered unless within 10 days after the entry of the order herein the defendant Randall stipulates to increase the amount of the verdict to $2,500, in which event the motion is denied. (Citing, also, Donadio v. City of Syracuse, 8 Misc 2d 138; Stachowiak v. Garmone, 3 Misc 2d 36.) Order may be prepared and submitted.